Submitted on brief September 2, affirmed September 9, 1919.

## STATE *v.* MARCO.

(183 Pac. 653.)

**Fish—When Evidence Sustains Conviction of Using Purse-nets Unlawfully.**

1. Where parties convicted of violating Laws of 1917, page 403, Section 2, stipulated that, in purse-net fishing, removing the net from the water and emptying it of the catch of fish is a necessary part of the fishing operation, one permitting his seine to drift with the tide across the dead-line into the forbidden territory, and there causing same to be lifted from the water to the vessel, is guilty of violation of such statute, although the fish entered the seine outside of the forbidden territory and the seine was closed before drifting across the line.

BENNETT, J., Dissenting.

From Clatsop: JAMES A. EAKIN, Judge.

In Banc.

The defendant is charged with having violated the provisions of Section 2 of Chapter 207 of the Laws of 1917, by fishing for salmon, with a purse-net, in a portion of the Columbia River, in which such fishing is prohibited by the act mentioned. Upon the trial in the lower court, the facts in the case were stipulated as follows:

"There being no disagreement between the parties to this action as to the actual facts pertaining to the matter, for the purpose of setting the same out in writing so that there will be no misunderstanding thereto, it is hereby stipulated and agreed between the parties that the following constitutes the actual facts in the case:

"That said defendant was the owner and operator of a purse seine, under a duly and regularly issued purse seine license of the State of Oregon; that on the day complained of in the complaint, he was operating said purse seine westerly on that certain line described in Chapter 207 of the Laws of 1917, and was fishing for salmon, by means of a device known as a

purse seine; that in such operation he laid out his purse seine westerly of said line in the Columbia River and the action of the tide carried the said purse seine into the Columbia River in an easterly direction, and east of that said certain line hereinbefore mentioned; that just before reaching said certain line, he caused the purse seine to be brailed, meaning thereby that the net was pursed or drawn in such a manner that no fish could then be entrapped in the said purse seine; that after such brailing or enclosing process, he allowed the net with the fish caught west of said line to be carried by the action of the tide east of that certain line in waters of the Columbia River and after the net arrived at a point about one hundred yards easterly of that certain line, he caused the net to be taken from the water and then onto the deck of the purse seine vessel and the fish removed from the net onto the deck of said purse seine vessel.

"It being stipulated that the fish were actually caught before the net was pursed or enclosed, and westerly of the line mentioned.

"It is further stipulated that in purse seine fishing, the act of removing the net from the water and emptying the same of the catch of fish is a necessary part of the fishing operation.

"It is further stipulated that it was impossible in this case to catch any fish in the net after it arrived at the said designated line by reason of the fact that the said net had been brailed, as mentioned. It is further stipulated that this action shall be tried by the court without a jury."

A judgment of conviction followed, from which the defendant appeals.    Affirmed.

For appellant there was a brief submitted over the name of *Messrs. Norblad & Hesse.*

For the State there was a brief prepared and submitted by *Mr. Jasper J. Barrett,* District Attorney.

BENSON, J.—1. The sole question submitted for our consideration, by this appeal, is this: Do the stipulated facts constitute a violation of the provisions of the act of 1917? This law is as follows:

"It shall be unlawful for any person or * * corporation, to fish for salmon, sturgeon or other anadromous fish by means of devices known as purse seines in any of the waters of the Columbia River in the State of Oregon or over which the State of Oregon has concurrent jurisdiction, east of a certain line which shall be drawn from the present inshore end of the north jetty on the Columbia River to the knuckle of the south jetty on said river, which knuckle is approximately four miles westerly from the Government dock at Fort Stevens. Said line will pass approximately three eighths (⅜) of a mile westerly from Buoy No. 10, as shown on the Coast Geodetic Survey Chart No. 6151, dated Jan. 5th, 1917."

Was the defendant *fishing* in forbidden waters, when he permitted' his seine to drift with the tide across the dead-line, into the forbidden territory, where he caused the seine to be lifted from the water to the deck of his vessel? The defendant urges that since the seine was brailed or pursed, so that no fish could thereafter be entrapped in the net, before it was carried over the line, and so remained until it was finally lifted into the boat, it cannot be said that he has violated the law by fishing east of the line.

With the assistance of able and industrious counsel, representing both plaintiff and defendant, we have succeeded in discovering but one authority which throws any light upon the problem thus presented, and that is the case of the *Ship Frederick Gerring Jr.* v. *The Queen,* 27 Canada Supreme Court Reports, 271. In this case, an American fishing schooner had been fishing at a point more than three marine miles from

the coast of Nova Scotia, and after the seine was pursed up and secured to the schooner, and while the crew were engaged in the act of baling the fish out of the seine with a long-handled dip-net, the vessel drifted to a point within a mile and a half of the coast, where she was seized by the authorities, and condemnation proceedings followed, for a violation of the treaty between the United States and Great Britain, and of certain English statutes. By the convention of 1818, the United States renounced forever,

"Any liberty heretofore enjoyed to take, dry or cure fish on or within three marine miles of any of the coasts, bays, creeks, or harbours of His said (Brittanic) Majesty's Dominions in America."

In harmony with this treaty, it was enacted by the Canadian parliament, that,

"If a foreign ship (unlicensed) has been found fishing or preparing to fish, or to have been fishing in British waters within three marine miles, etc., she shall be forfeited."

There, as here then, the question was: Was she "fishing" at the time of the seizure? The opinion of the court, which is quite extended and elaborate, contains the following:

"The act of fishing is a pursuit consisting, not of a single but of many acts according to the nature of the fishing. It is not the isolated act alone either of surrounding the fish by the net, or by taking them out of the water and obtaining manual custody of them. It is a continuous process beginning from the time when the preliminary preparations are being made for the taking of the fish and extending down to the moment when they are finally reduced to actual and certain possession. That, at least, is the idea of what 'fishing,' according to the ordinary acceptation of the word, means, and that, I think, is the meaning which we must give to the words in the statutes and treaty.

There is here, as I conceive, no need for interpretation, and the fundamental canon is: 'Do not interpret where there is no need of interpretation.' If when the S. S. 'Aberdeen,' moving eastward saw the 'Gerring,' a mile and three-quarters from shore, engaged as I have described, some of her crew baling fish from the water, others assisting to confine the fish into smaller and smaller compass, so as to be more easily secured; others driving the fish within the ambit of the dip net by splashing with their oars in the water; others sorting and dressing and otherwise treating the fish, the question were asked: 'What is the vessel doing?' Would not the inevitable answer be: 'She is fishing?' and if any one on board could be found bold enough to affirm that she was not 'fishing,' that that operation was completed hours before, when the seine was pursed up and the mackerel therein enclosed, would he not be set down as either ignorant of language or as bereft of reason?

"Even if the question depended upon the 'taking' of the fish, I do not understand that fish are 'taken' when they are enclosed in a seine, or encompassed about by it. They are still alive in their native element, possibly with few but still with some chances of escape. As I understand, they are never all taken; numbers escape. There is the contingency of the seine breaking, or the fish falling from the dip net between the seine and vessel, or of a storm arising and the vessel breaking away from the seine altogether. And there are, doubtless, many other chances of escape. The 'fishing' is not over—although there may be a moral certainty that the fish will eventually be secured—until as a fact they are secured."

In addition to the persuasive argument which we have just quoted, we are impressed with the fact that fishing with purse-seines is looked upon with disfavor by legislators, and the act upon which the prosecution herein is based is in the nature of a police regulation of a type of fishing which calls for restraint. This is

93 Or.—22

indicated by the fact that the act of 1917 was amended by Chapter 269, Laws of 1919, so as to make it unlawful, within the specified area, "to have any devices known as purse-seines, whether fishing or not, in any of the waters of the Columbia River in the State of Oregon or over which the State of Oregon has concurrent jurisdiction, etc." The opinion from which we have already quoted, speaks of fishing with purse-seines as—

"a business that, according to present light, and present scientific knowledge, may be characterized as nefarious, a business, the tendency of which is to annihilate for all time the fish-food supply of this continent, a business, too, which, so far as Canadian waters are concerned, has been prohibited and criminalized."

It appears to us quite conclusive that, since the parties hereto have stipulated that "in purse-seine fishing, the act of removing the net from the water and emptying the same of the catch of fish is a necessary part of the fishing operation," it is not our province to determine what particular steps in the fishing are intended to be prohibited by legislative enactment.

The defendant was "fishing" in forbidden waters and the judgment must be affirmed.     AFFIRMED.

BENNETT, J., dissents.